ERIC TROUTMAN - SBN 229263
Eric.troutman@wbd-us.com
ARTIN BETPERA SBN 244477
Artin.betpera@wbd-us.com
Womble Bond Dickinson (US) LLP
3200 Park Center Drive, Suite 700
Costa Mesa, CA 92626-7149
714-557-3800
714-557-3347

Attorneys for Defendant
LOAN DEPOT.COM, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| MIGUEL NAPOLES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOAN DEPOT.COM, LLC, and DOES 1 through 10, inclusive, and each of them,<br><br>Defendant. | Case No. 2:18-cv-01578-GW-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LOANDEPOT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY**<br><br>Hearing Date:   July 9, 2018<br>Time:           8:30 AM<br>Dept.:          9D |

# TABLE OF CONTENTS

**Page**

I. THE CASE SHOULD BE DISMISSED, WITH PREJUDICE, AS PLAINTIFF HAS NOT, AND CANNOT, ALLEGE THAT LOAN DEPOT CALLED HIM USING A DEVICE THAT RANDOMLY OR SEQUENTIALLY GENERATES NUMBERS ................................................... 2

    A. Rule 12(b)(6) Standard ............................................................................ 2

    B. Plaintiff's TCPA Claim Must Be Dismissed Because the Complaint Does not State Facts Demonstrating that LoanDepot Used an ATDS to Call Him ........................................................................ 3

    C. PLAINTIFF CANNOT AMEND HIS COMPLAINT TO STATE A VALID CLAIM WITHOUT ALLEGATIONS OF THE USE OF A RANDOM OR SEQUENTIAL NUMBER GENERATOR ............ 5

II. IF THE CASE IS NOT DISMISSED, WITH PREJUDICE, IT MUST BE STAYED TO ALLOW THE FCC TO RECONSIDER THE DEFINITION OF "ATDS" ................................................................................. 8

    A. The FCC's TCPA Public Notice and its Intent to Address ATDS Functionality .............................................................................................. 9

    B. If Plaintiff Challenges the Statutory Definition of ATDS Then the First Syntek Factor Will be Met .............................................................. 10

    C. The Second Third and Fourth Syntek Factors Are Also and Obviously Met ........................................................................................ 11

    D. Additional Factors Beyond Syntek Also Favor Application of the Primary Jurisdiction to Stay this Case ..................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018) .................... 1, 6, 7, 8, 9, 10, 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................... 3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal State Council of Carpenters*, 459 U.S. 519, 526 (1983) .................................................................................. 3

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) ........ 2

*Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343-TEH, 2014 U.S. Dist. LEXIS 65800, at *5 (N.D. Cal. May 12, 2014) ........................................ 11, 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................ 2

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) .............. 11

*Crooks v. Rady Children's Hosp.*, No. 17cv246-WQH-MDD, 2017 U.S. Dist. LEXIS 168085, at *11 (S.D. Cal. 2017) ........................................ 4

*Cunningham v. Forresters Financial Services, Inc.*, No. 2:17-cv-00077, 2018 U.S. Dist. LEXIS 3375, at *22 (N.D. Ind. Jan. 2018) ............................. 4

*Forney v. Hair Club For Men Ltd.*, No. CV 16-9640-R, 2017 U.S. Dist. LEXIS 214251 (C.D. Cal. 2017) ........................................................... 4, 5, 6

*Hanley v. Green Tree Servicing, LLC,* 934 F.Supp.2d 977, 982 (N.D. Ill. 2013) .......... 4

*Hensarling v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01555-DAD-SKO, 2016 U.S. Dist. LEXIS 24670, at *9 (E.D. Cal. 2016) ................................. 3, 5, 8

*Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *17-18 (D. Ariz. May 14, 2018) ............................. 8

*In re Portfolio Recovery Assocs., LLC*, No. 11md2295 JAH(BGS), 2014 U.S. Dist. LEXIS 197094, at *48 (S.D. Cal. May 19, 2014) ....................... 11, 12

*Izsak v. Draftkings, Inc.*, 191 F.Supp.3d 900, 904 (N.D. Ill. 2016) ................ 4

*Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-cv-00514-MCE-KJN, 2014 U.S. Dist. LEXIS 116817, at *6 (E.D. Cal. Aug. 20, 2014) ....................... 12

*Lemieux v. Lender Processesing Center*, No. 16-cv-1850, 2017 U.S. Dist. LEXIS 47139, at *12-13 (S.D. Cal. 2017) ................................................ 4

*Luna v. Shac*, 122 F. Supp. 3d 936, 940 (N.D. Cal. 2015) ............................ 6

*Marks v. Crunch San Diego, LLC,* 55 F.Supp.3d 1288, 1291-1292 (S.D. Cal. 2014) .......... 8

*Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *17 (D. Nev. Mar. 30, 2018)......................................................7, 8

*Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 U.S. Dist. LEXIS 89015, at *4-5 (N.D. Ill. 2015)..........................................................................................4

*Matlock v. United Healthcare Servs., Inc.*, No. 2:13-cv-02206-MCE-EFB, 2014 U.S. Dist. LEXIS 37612, at *5 (E.D. Cal. 2014) ...............................................12, 13

*Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ..........3

*Middleton v. Parrish Snead Franklin Simpson, PLC*, No. 2:16-cv-01217-APG-GWF, 2017 U.S. Dist. LEXIS 26998, at *6-7, n.18 (D. Nv. 2017).........................3, 5

*Priester v. eDegreeAdvisor, LLC*, No. 5:15-cv-04218-EJD, 2017 U.S. Dist. LEXIS 157961 (N.D. Cal. 2017) ..............................................................................4, 5

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) ...................11

*Scoma v. Equities*, No. 2:16-cv-41-FtM-99MRM, 2018 U.S. Dist. LEXIS 91467, at *8 (M.D. Fla. June 1, 2018) ......................................................................11, 12

*Synteck Seimconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) ...............................................................................8, 9, 10, 11, 12

**State Cases**

47 U.S.C. § 227.................................................................................................4, 5

47 U.S.C. § 227(a)(1).........................................................................................4, 5

47 U.S.C. § 227(b) ..................................................................................................1

**Federal Statutes**

FED. R. CIV. P. 12(b)(6)..........................................................................................2

**State Rules**

2003 Order, 18 FCC Rcd. 14,014, 14,115 ¶ 165 (2003) ...............................................6

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2008 Declaratory Ruling), 23 FCC Rcd. 559 (2008).......................6, 10

NOW COMES Defendant LoanDepot.com, LLC ("LoanDepot"), by and through its undersigned counsel, pursuant to FED. R. CIV. P. 12(b)(6) and the primary jurisdiction doctrine, and states the following in support of its Motion to Dismiss or, in the alternative, Motion to Stay:

## **INTRODUCTION**

Plaintiff Miguel Napoles brings a putative class action against LoanDepot for alleged negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b).  Plaintiff's Complaint, however, does not contain factual allegations supporting his conclusion that LoanDepot called him using an automatic telephone dialing system ("ATDS"), an element of liability. Case law is clear that a Complaint must state facts supporting ATDS usage in order to state a valid TCPA claim.

Importantly, the law has recently changed with respect to the functionalities of an ATDS.  Until recently, allegations that a device called from a list of numbers, or that a call recipient encountered a click or pause at the commencement of a call, were sufficient to state a claim because such allegations allowed an inference that an automated system was used to make the call.  Following *ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018)("*ACA Int'l*"), however, a device only qualifies as an ATDS if it performs the statutorily-mandated function of randomly or sequentially generating numbers to be dialed.  As Plaintiff cannot, consistent with Rule 11, allege that LoanDepot's dialers perform that function, this case must be dismissed with prejudice.

To the extent Plaintiff challenges the statutorily-mandated requirements of an ATDS—and thus asks this Court to adopt a definition of ATDS that is more expansive than the statute directs—then the case must be stayed pursuant to the primary jurisdiction doctrine. Following *ACA Int'l*, the Federal Communication Commission ("FCC")—the legislative agency entrusted by Congress to interpret and implement the TCPA—has issued a Public Notice seeking comment on the required functionalities of

an ATDS. The FCC is soon set to rule, therefore, on whether, and to what extent, equipment may qualify as an ATDS even if it does not perform the statutorily-mandated function of randomly or sequentially generating numbers. Until the FCC issues that ruling, however, this court must either apply the statute as written or else await—pursuant to the primary jurisdiction doctrine—further word from the Commission regarding the reach of the statute.

Accordingly, LoanDepot asks that the case now be dismissed, with prejudice, or, in the alternative, stayed pending the FCC's further ruling on the definition of an ATDS.

## STATEMENT OF RELEVANT ALLEGED FACTS

LoanDepot allegedly made phone calls to Plaintiff's cellular telephone number in an attempt to solicit him to purchase LoanDepot's services. Complaint, ¶¶ 8, 14.

Plaintiff claims that LoanDepot, "used an 'automatic telephone dialing system'" to make those calls, but alleges no supporting facts. *Id.* at ¶ 9.

Plaintiff alleges that LoanDepot did not have his express consent to make the calls at issue. *Id.* at ¶ 13.

## ARGUMENT

**I. THE CASE SHOULD BE DISMISSED, WITH PREJUDICE, AS PLAINTIFF HAS NOT, AND CANNOT, ALLEGE THAT LOAN DEPOT CALLED HIM USING A DEVICE THAT RANDOMLY OR SEQUENTIALLY GENERATES NUMBERS**

**A. Rule 12(b)(6) Standard**

Dismissal under FED. R. CIV. P. 12(b)(6) is proper when a complaint exhibits either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a complaint need not include detailed factual allegations, it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion, "are not entitled to the assumption of truth." *Id*. at 679. Instead, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678. Courts will not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements ...," *id*., and "[i]t is not proper for the court to assume that the plaintiff can prove facts that he has not alleged or that the defendant has violated the law in ways that have not been alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B. Plaintiff's TCPA Claim Must Be Dismissed Because the Complaint Does not State Facts Demonstrating that LoanDepot Used an ATDS to Call Him**

In order to plead a valid TCPA claim Plaintiff must allege, *inter alia*, that an ATDS was used to call his cell phone. E.g. *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)(reciting elements.) Because use of an ATDS is a required element of a TCPA claim, a Plaintiff must affirmatively allege facts supporting ATDS usage; he may not rely upon a threadbare recitation of the elements of the statute. See e.g. *Middleton v. Parrish Snead Franklin Simpson, PLC*, No. 2:16-cv-01217-APG-GWF, 2017 U.S. Dist. LEXIS 26998, at *6-7, n.18 (D. Nv. 2017) (dismissing complaint for lack of facts supporting ATDS usage because "conclusor[y] alleg[ations] that the defendants 'used an automatic telephone dialing system,'" were "not enough."); *Hensarling v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01555-DAD-SKO, 2016 U.S. Dist. LEXIS 24670, at *9 (E.D. Cal. 2016)("Plaintiff's First Amended Complaint does not allege facts that allow this court to draw reasonable

inference regarding defendant's use of an ATDS"); *Lemieux v. Lender Processesing Center*, No. 16-cv-1850, 2017 U.S. Dist. LEXIS 47139, at *12-13 (S.D. Cal. 2017)(finding "most courts" require a Plaintiff "to plead at least some facts… which would support the allegation that an ATDS was used."); *Izsak v. Draftkings, Inc.*, 191 F.Supp.3d 900, 904 (N.D. Ill. 2016)("[t]his Court agrees with the view that where a fact—here, use of an ATDS—is itself an element of the claim, it is not sufficient to recite that fact verbatim without other supporting details.")(internal quotations omitted); *Cunningham v. Forresters Financial Services, Inc.*, No. 2:17-cv-00077, 2018 U.S. Dist. LEXIS 3375, at *22 (N.D. Ind. Jan. 2018)("the complaint must include at least some facts to support the conclusion that an ATDS was used."); *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 U.S. Dist. LEXIS 89015, at *4-5 (N.D. Ill. 2015); *Hanley v. Green Tree Servicing, LLC,* 934 F.Supp.2d 977, 982 (N.D. Ill. 2013); see also *Crooks v. Rady Children's Hosp.*, No. 17cv246-WQH-MDD, 2017 U.S. Dist. LEXIS 168085, at *11 (S.D. Cal. 2017)("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"), *quoting Iqbal* at 678.  Indeed, two courts have recently rejected virtually identical allegations contained within complaints filed by the same counsel representing Plaintiff in this case. See *Priester v. eDegreeAdvisor, LLC*, No. 5:15-cv-04218-EJD, 2017 U.S. Dist. LEXIS 157961 (N.D. Cal. 2017); *Forney v. Hair Club For Men Ltd.*, No. CV 16-9640-R, 2017 U.S. Dist. LEXIS 214251 (C.D. Cal. 2017).

In *Priester*, the plaintiff purported to bring a class action pursuant to 47 U.S.C. § 227, alleging that the defendant made marketing calls to his cellular telephone.  *Id*. at *2.  The *Priester* first amended complaint addressed defendant's purported use of an ATDS only once.  *Id*. at *5.  Specifically, it alleged, "Defendant used an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its services."  *Id*.  The *Priester* court granted the ensuing motion to dismiss, albeit with leave to amend.  *Id*. at *8.  In evaluating the motion,

*Priester* held that the first amended complaint's bald assertion that its defendant used an ATDS was a "classic conclusory allegation" that was not entitled to the presumption of truth. *Id*. at *5.

Likewise, this Court was confronted with a similar threadbare pleading effort in *Forney*. *Forney*, 2017 U.S. Dist. LEXIS 214251. There, as here, the plaintiff, attempted to bring a class action TCPA claim pursuant to § 227 and, again, alleged only that "Defendant used an 'automated telephone dialing system' as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff." *Id*. at *2-3. The *Forney* defendant moved to dismiss the complaint and the *Forney* court granted it. *Id*. at *6-8. In doing so, *Forney* held that the Complaint's ATDS allegations constituted nothing more than a pleading of the statutory language from the TCPA that the court was not obligated to accept. *Id*.

Here, Plaintiff alleges no facts supporting the use of an ATDS. See Compl., ¶ 9. So he fails to state facts sufficient to state a valid TCPA claim. *Preister,* supra at *8; *Forney*, supra at *6-8; *Middleton*, 2017 U.S. Dist. LEXIS 26998 at *6-7, n.18; *Hensarling,* 2016 U.S. Dist. LEXIS 24670 at *9. Thus the Motion should be granted.

### C. PLAINTIFF CANNOT AMEND HIS COMPLAINT TO STATE A VALID CLAIM WITHOUT ALLEGATIONS OF THE USE OF A RANDOM OR SEQUENTIAL NUMBER GENERATOR

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

Prior to March 16, 2018, courts attempting to determine whether a device constituted an ATDS looked to a series of rulings issued by the FCC interpreting the phrase ATDS beyond its statutory moorings. The FCC began aggressively expanding the definition of ATDS in 2003. In the 2003 Order, the FCC determined that predictive dialers are subject to the TCPA because "[t]he basic function of such equipment [is] the capacity to dial numbers without human intervention." 2003 Order,

18 FCC Rcd. 14,014, 14,115 ¶ 165 (2003). The FCC reaffirmed this decision in its Declaratory Ruling released on January 4, 2008. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2008 Declaratory Ruling), 23 FCC Rcd. 559 (2008)("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."). In 2015, the expansion of the ATDS took another quantum leap, when the FCC's 2015 Omnibus Order defined an ATDS so broadly that any smartphone could qualify as an ATDS. *See ACA Int'l*, at 697 ("[A]ll smartphones, under the Commission's approach, meet the statutory definition of an autodialer.").[1]

Due to the broad definition of ATDS previously adopted by the FCC—and owing to difficulty a Plaintiff may have alleging facts at the pleadings stage— courts generally accepted limited allegations of "clicks and pauses" as sufficient to allege ATDS use in a complaint. See e.g. *Forney*, 2017 U.S. Dist. LEXIS 214251 at *4 (stating acceptable ATDS allegations would include: "the robotic sound of the voice on the other line, the lack of human response when [s]he attempted to have a conversation with the 'person' calling her, [or] the generic content of the message she received . . .")

In the spring of 2018, however, the D.C. Circuit Court of Appeal issued a decision rejecting the FCC's expansive approach to the agency's definition of ATDS. *See ACA Int'l*, 885 F.3d at 687. In *ACA Int'l v. Fed. Commc'ns Comm'n*, the D.C. Circuit set aside the FCC's prior attempts to define an ATDS, noting that the FCC's interpretation of the statute was "unreasonably expansive." *Id*. at 692. While the appeal was taken from the FCC's 2015 TCPA Omnibus ruling, the D.C. Circuit expressly refused to confine its review to that ruling alone. *Id*. at 701 ("[We]

---

[1] Prior to the *ACA Int'l* decision, several courts in the Ninth Circuit relied upon these expansive FCC orders interpreting the meaning of ATDS. See e.g. *Luna v. Shac*, 122 F. Supp. 3d 936, 940 (N.D. Cal. 2015).

disagree" with FCC's contention that previous orders address predictive dialers are beyond the purview of the appeal).

The D.C. Circuit reviewed the FCC's previous rulings respecting predictive dialers and found them inconsistent with the FCC's 2015 Omnibus Order. *Id*. at 701-02 (finding that "[i]n certain respects, the [2015 Omnibus Order] order conveys that equipment needs to have the ability to generate random or sequential numbers that it can then dial.") Since not all predictive dialers have the capacity to dial randomly or sequentially, the D.C. Circuit Court of Appeal found the 2015 Omnibus Order to be internally inconsistent. The D.C. Circuit concluded:

> In short, the Commission's ruling, in describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decisionmaking. The order's lack of clarity about which functions qualify a device as an autodialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions. We must therefore set aside the Commission's treatment of those matters.

*Id.* at 703. The Court set aside the FCC's interpretation of ATDS and ordered the agency to reconsider and clarify what constitutes an ATDS within the meaning of the TCPA. *Id*.

To be clear: the FCC's 2003 and 2008 predictive dialer orders are no longer good law after *ACA Int'l*. See *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *17 (D. Nev. Mar. 30, 2018)("the D.C. Circuit explicitly rejected this "expansive" interpretation of the TCPA, particularly as that definition pertained to systems that may not, in fact, have the capacity to dial randomly or sequentially [and, as such,] Plaintiff cannot rely on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers."); *id.* at *11-12 (addressing predictive dialer rulings); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *17-18 (D. Ariz. May 14,

2018)(finding that the D.C. Circuit Court of Appeals had "set aside" the Federal Communication Commission's earlier pronouncements that a predictive dialer is an ATDS within the meaning of the TCPA, and that it would therefore reject reliance on the FCC's prior predictive dialer pronouncements, or any subsequent district court rulings applying these "now-defunct FCC interpretations.")

Following *ACA Int'l,* therefore, Plaintiff must allege facts demonstrating the use of a random or sequential number generator. *Herrick*, supra at *8-10 (interpreting the definition of ATDS after *ACA*); *Marshall*, supra at *17; see also *Hensarling v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01555-DAD-SKO, 2016 U.S. Dist. LEXIS 24670, at *6 (E.D. Cal. 2016)(a 'random or sequential number generator' refers to the genesis of the list of numbers, not an 'order to be called'."); *Marks v. Crunch San Diego, LLC,* 55 F.Supp.3d 1288, 1291-1292 (S.D. Cal. 2014).

As Plaintiff will not be able to make such an amendment, consistent with Rule 11, the case should be dismissed with prejudice.

## II. IF THE CASE IS NOT DISMISSED, WITH PREJUDICE, IT MUST BE STAYED TO ALLOW THE FCC TO RECONSIDER THE DEFINITION OF "ATDS"

While the Court can and should dismiss the case, with prejudice, since Plaintiff does not, and cannot, allege facts demonstrating that an ATDS was used in this case, to the extent the Plaintiff urges the Court to define the phrase "ATDS" beyond its statutory definition, the case must be stayed under the primary jurisdiction doctrine.

Primary jurisdiction is a prudential doctrine under which courts may determine that the relevant agency, rather than the courts, should perform the initial decision making. *Synteck Seimconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The primary jurisdiction doctrine's purpose is to protect the regulatory scheme by preventing conflicts between the regulatory scheme and court decisions. *Id*. The doctrine is properly invoked "when a claim is cognizable in federal court requires resolution of an issue of first impression, or of a particularly

complicated issue that Congress has committed to a regulatory agency." *Id*. Although courts have discretion in determining whether to invoke the primary jurisdiction doctrine, courts have traditionally considered the following four factors to determine whether to invoke the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statue that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id*. at 781.

As shown below, to the extent Plaintiff argues that he need not meet the statutory definition of an ATDS in this case, all four *Syntek* factors plainly favor a stay in this case.

### A. The FCC's TCPA Public Notice and its Intent to Address ATDS Functionality

As explained above, *ACA Int'l* took the FCC to task for an overly-expansive and internally-inconsistent approach to defining ATDS in past orders. See *ACA Int'l* at 703. The D.C. Circuit Court of Appeal vacated those orders and sent the FCC back to the drawing board with its mandate issued on May 8, 2018. See Ex. A, Mandate, *ACA Int'l v. FCC*, No. 15-1211, Doc. No. 1729873 (D.C. Cir. May 8, 2018).

Less than a week later, on May 14, 2018 the FCC issued a Public Notice respecting the scope and architecture of the TCPA in light of *ACA Int'l*. See Ex. B, Federal Communications Commission Public Notice, CG Docket No. 18-152, 02-278 (May 13, 2018).

The Public Notice leads with a discussion of issues pertaining to the definition of ATDS and seeks public comment regarding, *inter alia*, whether a random or sequential number generator must be used in order for a call to fall within the scope of the TCPA. These issues include: (i) "what constitutes an 'automatic telephone dialing system[,]'" Ex. B at 1; (ii) "how to interpret 'capacity' in light of the [ACA] court's

guidance[,]" *id.* at 2; (iii) "the function a device must be able to perform to qualify as an automatic telephone dialing system[,]" *id.*, (iv) whether "[i]f equipment cannot itself dial random or sequential numbers, can that equipment be an automatic telephone dialing system[,]" *id.* at 3; and (v) whether "the bar against 'making any call using' an automatic telephone dialing system appl[ies] only to calls made using the equipment's automatic telephone dialing system functionality[,]" *id.*

Importantly, Chairman Pai is already on record describing the TCPA as a "statutory rifle shot" and has stated his opinion that the TCPA has fulfilled its intended purpose of preventing random or sequentially dialed phone calls. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 8075 (2015). Since the FCC is now Republican-leaning and under his direction—whereas the FCC was under Democratic control and lead by TCPA-expansionist Tom Wheeler at the time the 2015 TCPA Omnibus ruling was handed down—there is very good reason to believe that the FCC will show fidelity to the statutory definition when it addresses the TCPA in light of *ACA Int'l*.

### B. If Plaintiff Challenges the Statutory Definition of ATDS Then the First *Syntek* Factor Will be Met

The first *Syntek* factor mandates that a case should only be stayed if a court actually has to resolve the issue that is reserved for agency decision making. See *Syntek*, 307 F.3d at 781.

To the extent, therefore, that Plaintiff agrees with LoanDepot that the statutory definition of ATDS—devoid of any FCC enhancements—provides the dispositive law in this case then the Court may—and properly should—proceed with this case.

To the extent however, that Plaintiff challenges the scope or application of the phrase "ATDS" to this case, then the Court will be forced to "resolve an issue" that is currently before the FCC for consideration, thus meeting the first *Syntek* requirement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LOANDEPOT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STAY

### C. The Second Third and Fourth *Syntek* Factors Are Also and Obviously Met

"The Second, Third, and Fourth *Syntek* primary jurisdiction factors are met here because Congress has placed the uniform interpretation and comprehensive enforcement of the TCPA within the primary jurisdiction of the FCC." *See Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343-TEH, 2014 U.S. Dist. LEXIS 65800, at *5 (N.D. Cal. May 12, 2014). As the *Barrera* court recognized,

> Congress vested the FCC with considerable authority to implement the TCPA. The Act gives the agency power to 'prescribe regulations to implement' the legislation, . . . to exempt calls from the requirements of the Act . . . and to enforce the provisions of the Act and its accompanying regulations. . . In addition to these lawmaking and law-enforcing powers, the FCC has interpretive authority over the TCPA. . .

*Id*. (quoting *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010).) In short, "Congress has delegated the FCC with authority to make rules and regulations to implement the TCPA." *Id*. at *6 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).) This delegation of authority satisfies the second, third, and fourth *Syntek* primary jurisdiction factors. *Id*.

The definition of the term "ATDS" is not within the conventional experience of judges but, instead, involves technical and policy considerations within the FCC's expertise. *In re Portfolio Recovery Assocs., LLC*, No. 11md2295 JAH(BGS), 2014 U.S. Dist. LEXIS 197094, at *48 (S.D. Cal. May 19, 2014); see also *Scoma v. Equities*, No. 2:16-cv-41-FtM-99MRM, 2018 U.S. Dist. LEXIS 91467, at *8 (M.D. Fla. June 1, 2018)("[d]eferring to the FCC would advance the basic purpose of the [primary jurisdiction] doctrine because the specialized knowledge of the FCC is needed to answer the questions before the Court.") As a result, while acknowledging the *ACA Int'l* opinion and the FCC's prior shortcomings, it is obvious that this Court, and all courts, are likely to benefit from the FCC's guidance as to the meaning of the term "ATDS[,]" especially considering the guidance already provided to the FCC in *ACA Int'l*. See *Id*. Further, it is also highly likely that, if both this Court and the FCC

proceed to resolve these issues independent of each other, their definitions of "ATDS" will conflict. See *Id*. The need to avoid potential conflicting opinions and to benefit from the FCC's guidance in determining the meaning of the term "ATDS," satisfies the first *Syntek* factor. *In re Portfolio Recovery*, supra; *Barrera*, 2014 U.S. Dist. LEXIS 65800 at *5-6; *Scoma*, supra ("[d]eferral is necessary for a uniform interpretation of the statutory questions [under the TCPA] at issue.")

### D. Additional Factors Beyond *Syntek* Also Favor Application of the Primary Jurisdiction to Stay this Case

Beyond the strict *Syntek* factors, additional considerations counsel in favor of staying this case pending the completion of the FCC's rulemaking process. First, judicial economy weighs in favor of staying this case. *See Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-cv-00514-MCE-KJN, 2014 U.S. Dist. LEXIS 116817, at *6 (E.D. Cal. Aug. 20, 2014); *Scoma*, 2018 U.S. Dist. LEXIS 91467 (stay under primary jurisdiction doctrine pending FCC rulemaking "will simplify and streamline the issues raised in this case and reduce the burden of litigation on the parties and on the Court.") As noted above, absent a stay, this Courts risks issuing a decision that conflicts with a decision to be issued by the FCC. Judicial economy weighs against issuing a decision and allowing the parties to litigate based upon that decision only to risk having that decision be undermined by the FCC's decision. *Id*.; see alao *Matlock v. United Healthcare Servs., Inc.*, No. 2:13-cv-02206-MCE-EFB, 2014 U.S. Dist. LEXIS 37612, at *5 (E.D. Cal. 2014).

Second, Plaintiff's Complaint does not allege that the alleged TCPA violations are ongoing. *See* Complaint. As a result, Plaintiff will not suffer any further alleged damages during a stay. *Matlock*, supra.

Third, Plaintiff will not suffer any prejudice because of a stay. See *Barrera*, 2014 U.S. Dist. LEXIS 65800 at *12-13; see also *Scoma*, supra. This case is in the

earliest stage of litigation such that the Plaintiff will not be prejudiced by delay. *Matlock,* supra.

Further, Plaintiff will suffer no discovery prejudice because he is in possession of, or can obtain, his telephone records pertinent to his claims, and both the Plaintiff and the Defendants are obliged to preserve their records.  See *Barrera*, supra.

## CONCLUSION

For the reasons set forth above, the Complaint must be dismissed, with prejudice. In the alternative this case must be stayed pursuant to the primary jurisdiction doctrine.

DATED:  June 6, 2018                WOMBLE BOND DICKINSON (US) LLP

By: /s/ *Eric Troutman*
Eric Troutman (CA Bar No. 229263)
Artin Betpera (CA Bar No. 244477)
WOMBLE BOND DICKINSON (US) LLP
3200 Park Center Drive, Ste. 700, Costa Mesa, CA 92626
Telephone: (657) 266-1046
Fax:  (714) 371-2656

# CERTIFICATE OF SERVICE

**Miguel Napoles v. LoanDepot.com**
**C.A. No. 2:18-cv-01578-RAO**

I hereby certify that on this 6th day of June, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LOANDEPOT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY.**

I hereby certify that I have mailed by United States Postal Service and sent by electronic mail the following document to the following non-CM/ECF participants:

Todd M. Friedman, Esq.
Adrian R. Bacon, Esq.
Meghan E. George, Esq.
Tom E. Wheeler, Esq.
Yoel S. Hanohov, Esq.
LAW OFFICES OF TODD M. FRIEDMAN, PC
21550 Oxnard Street, Suite 780
Woodland Hills, CA  91367
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeroge@toddflaw.com
twheeler@toddflaw.com
yoel.hanohov@toddflaw.com


  /s/ Eric Troutman
Eric Troutman

WBD (US) 43028479v1

14
CERTIFICATE OF SERVICE