Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Tom E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@ toddflaw.com
abacon@ toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL NAPOLES, individually and on behalf of all others similarly situated, | Case No. 2:18-cv-01578-GW-RAO |
| Plaintiff, | **OPPOSITION TO DEFENDANT'S MOTION TO STAY** |
| vs. | |
| LAON DEPOT.COM, LLC, and DOES 1 through 10, inclusive, and each of them, | |
| Defendant. | |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS............................................................................... 2

III. LEGAL STANDARD..................................................................................... 2

IV. LEGAL ARGUMENT.................................................................................... 4

  A. Defendant's Motion To Stay Should Be Denied............................................ 4

    1. Potential FCC Action Is Not Even Pending, And In Any Event Will Have No Impact On Whether Defendant's Platform Is An ATDS Because There Is Binding Ninth Circuit Precedent Already On The Issue .................................. 4

    2. Defendant Will Not Be Prejudiced Because Defendant Seeks Only To Avoid Actually Litigating This Matter. ............................................................. 6

    3. Plaintiff Will Be Prejudiced Because The Stay Will Negatively Affect The Maturation Of Evidence..................................................................................... 6

    4. Without Appropriate Discovery, the Court Will Be Prevented From Making An Informed Ruling........................................................................................... 8

    5. The Court Should Deny The Stay Because It Affords Defendant More Time To Cause Harm To The Public With Its Actions............................................... 8

V. CONCLUSION ................................................................................................ 9


# TABLE OF AUTHORITIES

**Cases**

*Avant! Corp. v. Superior Court,* 79 Cal. App. 4th 876 ............................................. 3

*Checker Cab Mfg. Co. v. Checker Taxi Co.*, 26 F.2d 752 ....................................... 3

*Crooks v. Rady Children's Hospital,* Case No. 17CV246-WQH-MDD, 2017 WL 4541742, at *3 ................................................................................................. 8

*Dolbeer v. Stout*, 139 N.Y. 486, 489, 34 N.E. 1102 ................................................. 3

*Enelow v. New York Life Ins. Co.*, 293 U.S. 379 ...................................................... 3

*Glick v. Performant Fin. Corp.,* No. 16-CV-05461-JST, 2017 WL 786293, at *2 ... 7

*Grant v. Capital Management Services, L.P.,* 2011 WL 3874877 .......................... 1

*Jefferson Standard Life Ins. Co. v. Keeton*, 292 F. 53 .............................................. 3

*Kansas City Southern Ry. v. United States*, 282 U.S. 760 ....................................... 3

*Keating v. Office of Thrift Supervision* 45 F.3d 322 ................................................ 3

*Landis v. Am. Co.,* 299 U.S. 248 .......................................................................... 2, 3

*Lathrop v. Uber Technologies, Inc.,* Case No. 14-CV-05678-JST 2016 WL 97511, at *4 ............................................................................................................ 7

*Lockyer v. Mirant Corp.,* 398 F.3d 1098 .................................................................. 6

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 ..................................... 5

*Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 ......................................... 9

*Pedro-Salcedo v. Haagen-Dazs Shoppe Company, Inc.*, Case No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *3 ................................................................... 8

*Petrov v. Alameda County*, Case No. 16-CV-04323-YGR 2016 WL 6563355, at *6 ............................................................................................................................ 8

*Rosenberg v. Slotchin*, 181 A.D. 137, 138, 168 N.Y.S. 101 .................................... 3

*Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 ................................................. 4

*Wadleigh v. Veazie*, 28 F. Cas. 1319 ........................................................................ 3

**Statutes**

47 C.F.R. §§ 64.1200 ........................................................................................... 1

47 U.S.C. § 227 ............................................................................................... 1, 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant Loan Depot.Com LLC ("Defendant" or "Loan Depot") has engaged in a widespread pattern and practice of cold calling individuals using an automatic telephone dialing system ("ATDS") to purchase services without having users' prior express written consent, as is required under applicable TCPA regulations,[1] and Ninth Circuit precedent.[2] Irrespective of this backdrop, Defendant asks The Honorable Court to stay the case indefinitely while the FCC considers whether it would like to take any further action regarding the definition of what constitutes an ATDS. Defendant's Motion should be summarily denied.[3]

Defendant's request to stay this action pending action by the FCC that has not even been initiated is a clear delay tactic meant to prejudice the class. There is already an established body of caselaw, which is binding on this Court, and which lays out the requisite standards under which a dialing system is determined to be an ATDS. Moreover, delaying this case indefinitely will prejudice the class, as witnesses lose their memories of events or become unavailable, records, including third party records, are lost to time, and class members move and become harder to

---

[1] If a call "includes or introduces an advertisement" or "constitutes telemarketing," prior express consent must be *written*. *See* 47 C.F.R. §§ 64.1200 (a)(1)(2). The regulation also defines "advertising" and "telemarketing." *See* 47 C.F.R. §§ 64.1200(f)(1)(12). An "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." Id.§ (f)(1). "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. § (f)(12).
[2] *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009); *Grant v. Capital Management Services, L.P.,* 2011 WL 3874877 (9th Cir. Sept. 2, 2011)
[3] Plaintiff has filed a First Amended Complaint pursuant to his right under Fed. R. Civ. P. 15 in response to Defendant's Motion to Strike and Motion to Dismiss. While this moots the other aspects of the Motions, Plaintiff must still respond to the Motion to Stay.

locate to give them notice. This Court should not grant a Stay in this matter when the issues of this case have yet to fully develop through the process of discovery to determine whether factually a Stay would be appropriate. More importantly, the Court cannot grant a stay in this matter when the issues argued in *ACA International* have little to no bearing on the matter at hand here. Therefore, Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff Miguel Napoles ("Plaintiff") alleges that Defendant Loan Depot engaged in a pattern and practice of placing unwanted solicitation dialer calls to individuals without their prior express consent. This is exactly the kind of conduct the TCPA was designed to prohibit. 47 U.S.C. § 227(b)(1)(A).

On or about April 2017, Defendant called Plaintiff's cellular telephone number in an attempt to solicit him to purchase Defendant's services. Dkt. 18 ("FAC") at ¶ 8. Plaintiff alleges that this call constituted telemarketing because it promotes Defendant's goods and services. *Id*. at ¶ 16. Plaintiff never provided Defendant with his prior express written consent to be contacted using an ATDS. *Id*. at ¶ 14. Plaintiff alleges that the call was placed with an ATDS, a device capable of storing number and of dialing them using a random or sequential number generator. *Id.* at ¶¶ 9-10. Plaintiff alleges that Defendant called numerous consumers throughout the United States without their prior express consent and brings this matter on behalf of the putative Class to stop Defendant's illegal solicitation calls using a dialer. *Id.* at ¶¶ 20-30.

## III.    LEGAL STANDARD

The Supreme Court has explained, "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigations." *Landis v. Am. Co.,* 299 U.S. 248, 254 (1936). "[T]his can best be done…[by] weigh[ing] competing interests and maintain[ing] an even balance. *Id*. (citing to

*Kansas City Southern Ry. v. United States*, 282 U.S. 760, 763 (1931); and, *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). Importantly, the Supreme Court imposed a <u>heavy burden</u> for a party moving for a stay of proceeding, stated that the moving party "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255 (emphasis added). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. Finally, the Supreme Court cautioned that due to the "likelihood or danger or abuse, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id*. at 256 citing to *Dolbeer v. Stout*, 139 N.Y. 486, 489, 34 N.E. 1102, 1102 (1893); *Rosenberg v. Slotchin*, 181 A.D. 137, 138, 168 N.Y.S. 101, 102 (App. Div. 1917); *Wadleigh v. Veazie*, 28 F. Cas. 1319, 1320 (C.C.D. Me. 1838); *Checker Cab Mfg. Co. v. Checker Taxi Co.*, 26 F.2d 752 (N.D. Ill. 1928); and, *Jefferson Standard Life Ins. Co. v. Keeton*, 292 F. 53, 53 (4th Cir. 1923).

California relies the following five factor analysis, in determining the appropriateness of granting a stay: "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. See, *Avant! Corp. v. Superior Court,* 79 Cal. App. 4th 876, 885 (2000) (Citing *Keating v. Office of Thrift Supervision* 45 F.3d 322, 324-325 (9th Cir.1995).).Here, this Court should exercise its discretion and deny Defendant's Motion, since the current action is not one of the "rare circumstances" that warrant Defendant's requested remedy, and Plaintiff's interests

in effectively adjudicating the case at hand on its merits outweighs any potential competing interests of the Defendant to stay the case.

## IV. LEGAL ARGUMENT

### A. Defendant's Motion To Stay Should Be Denied

#### 1. Potential FCC Action Is Not Even Pending, And In Any Event Will Have No Impact On Whether Defendant's Platform Is An ATDS Because There Is Binding Ninth Circuit Precedent Already On The Issue

Defendant notes in the opening of its "stay" portion of its Motion that if the Plaintiff urges the Court to define ATDS beyond its statutory definition, the case must be stayed. Plaintiff does no such thing, and only urges the Court to follow the Meyer and Satterfield cases that are binding precedent in this Circuit and looked only at the plain meaning of the statutes such that the revision of any portion of the "FCC Orders" has no implication on their binding nature.[4] There is binding case law on the issue of the definition of an "ATDS" based on the plain language of the statute alone out of the Ninth Circuit and elsewhere such that there is not a "matter of first impression" that implicates the *Synteck* factors. First, *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), requires courts to give meaning to the term "capacity" in the ATDS definition. It holds that the district court erred by focusing on whether the dialer actually stored, produced, or called numbers using a random or sequential number generator. Instead, the Ninth Circuit held that the district court should have asked whether the device had the capacity to do so. This makes sense, because the word "capacity" is in the plain language of the TCPA's ATDS provision, and the word's normal meaning envisions not how something is used, but how it could be used. The ACA decision took issue with the FCC's interpretation of "capacity" as meaning "potential capacity;" however by default,

---

[4] Accordingly based on Plaintiff's position, it would seem Defendant agrees the case should not be stayed, as it has not otherwise addressed any of the *Avant!* Factors in its Motion.

capacity must still mean at the very least "present capacity" i.e. how the system as it currently exists could be used.

In a second decision, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) decided three years before the FCC's 2015 order, appears to adopt the view that "capacity" is not limited to present ability. In pertinent part, the Ninth Circuit held:

> [The defendant caller] argues that its dialers do not have the present capacity to store or produce numbers using a random or sequential number generator. As we explained in *Satterfield v. Simon & Schuster, Inc.,* the clear language of the TCPA "mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" 569 F.3d 946, 951 (9th Cir.2009). PRA's securities filing shows that PRA uses predictive dialers. PRA does not dispute that its predictive dialers have the capacity described in the TCPA. This is sufficient to determine that PRA used an automatic telephone dialing system.

*Id.* at 1043 (emphasis added). The contrast between "present capacity" in the first sentence of this passage with "the capacity" in the second-to-last sentence compels the conclusion that the court views the term "capacity" as meaning more than "present capacity." Regardless of whether the current test is "present capacity," "potential capacity" or something in between, the system used by Defendant in this matter is able to be adjudged under an ATDS under this Circuit's current case law regardless. Thus, any interpretive action by the FCC would have little if any impact on the case at bar.

Defendant's Motion to Stay is also based on an ephemeral and yet non-existent decision that could potentially be rendered by the FCC at some unknown time, or which may never come at all. Specifically, Defendant points to the recent ACA decision out of the DC Circuit of Appeals, and some petitions filed with the FCC thereafter which request that the FCC take further action on defining an

ATDS. The FCC has not indicated any timeline under which it may undertake such action, if at all, and there is no reason to believe it will be any time soon. Even if the FCC does take action, there will almost certainly be appeals, which will last several years just as the ACA appeal took three years after the 2015 FCC ruling was issued. Moreover, it is unclear how even if such action is taken, it would have any impact on this case, where the technology used to place the calls at issue is not disclaimed by Defendant to only have the potential capacity rather than present capacity. Only discovery may answer that question, and as discussed above, there already is case law to guide the determination in this Circuit. Defendant is asking The Court to stay this case indefinitely while the FCC considers whether it would like to take some action in the future where, even if the FCC did act, its actions would not likely impact this litigation in any meaningful fashion.

### 2. Defendant Will Not Be Prejudiced Because Defendant Seeks Only To Avoid Actually Litigating This Matter.

Defendant does not once argue in its Motion that it will be prejudiced in any way whatsoever. In fact, there is no such prejudice unless one counts as prejudice the burden of undertaking costs and expenses to litigate. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." See, *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir. 2005). Because Defendant offers no explanation as to how it would be burdened if a stay is not granted, and because there is no legitimate explanation as to how a denial of a stay would burden Defendant at all, Defendant has failed in its heavy burden of demonstrating the necessity of a stay.

### 3. Plaintiff Will Be Prejudiced Because The Stay Will Negatively Affect The Maturation Of Evidence.

On the other hand, Plaintiff absolutely suffers prejudice, resulting from the possibility of a stay, to their ability to build their case. This stay will harm Plaintiff

because the resulting lapse of time, memory of witnesses fading, and company turnover at Defendant's place of business, with regard to material witnesses will deny Plaintiff the ability to seek relief for his injuries while the facts and events of this matter are fresh in his and the witnesses' minds.  Additionally, Class Members will be more likely to move and will become harder to track down and notify them of this matter if the class is certified.  Defendant has no way to predict how l, especially in light of the fact that the FCC has issued no timeline at all for when or even whether it will be issuing any new interpretive rule or regulation.  Moreover, even if it did issue a new order, that order would likely face challenge, resulting in possibly three years of waiting, just as parties waited three years for the D.C. Circuit to issue its decision on the ACA appeal of the 2015 FCC Order.  This is patently unreasonable. *See Glick v. Performant Fin. Corp.,* No. 16-CV-05461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) ("the resolution of *ACA International* does not mark the final disposition of the issues on appeal. The losing party will likely appeal the D.C. Court's decision, further delaying these proceedings until the issues are finally decided by the U.S. Supreme Court. This Court previously held that it is impossible to forecast when a decision in *ACA International* will be rendered. See, *Lathrop v. Uber Technologies, Inc.,* Case No. 14-CV-05678-JST 2016 WL 97511, at *4 (N.D. Cal., Jan. 8, 2016)).")  The issues that are being considered by the FCC in the requests referenced by Defendant are complex and will take numerous years to be determined through appeals, without question.  This is a certainty.  The case at bar cannot be put on hold forever while politicians, plaintiffs and defendants fight with the FCC over what the word "capacity" means, particularly when the Ninth Circuit already has still binding case law on the term based on the plain language of the statute.  With no deadline on the horizon, the amount of prejudice Plaintiff and the Class would suffer from a stay is incalculable.

### 4. Without Appropriate Discovery, the Court Will Be Prevented From Making An Informed Ruling.

Recently, the Ninth Circuit denied a defendant's motion to stay due to the infancy of the proceedings and the lack of clarity among the issues since the parties had yet to propound discovery and identify the prevailing issues. See, *Crooks v. Rady Children's Hospital,* Case No. 17CV246-WQH-MDD, 2017 WL 4541742, at *3 (S.D. Cal., Oct. 10, 2017). The Hon. William Q. Hayes commented on the need for discovery in order to help him properly determine whether *ACA International* has any dispositive effect on this case. *Crooks,* 2017 WL 4541742, at *3. Other District Court Judges followed suit with denying premature motions to stay proceedings until a party can present more evidence, through discovery, warranting a stay. The Hon. Edward J. Davilla, of the Northern District of California, denied issuing a stay, because without discovery, the Court could not determine if *ACA International* had any dispositive effect on the matter. *Pedro-Salcedo v. Haagen-Dazs Shoppe Company, Inc.*, Case No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *3 (N.D. Cal., Oct. 11, 2017).

This case before this Honorable Court is still in its infancy. With no substantial discovery completed or deadlines set for motions or discovery, granting a stay at this period would harm this Court's interests in judicial efficiency and integrity.

### 5. The Court Should Deny The Stay Because It Affords Defendant More Time To Cause Harm To The Public With Its Actions.

"Proceeding with this civil case will best serve the interests of the public by "ensuring that aggrieved parties are made whole as rapidly as possible." *Petrov v. Alameda County*, Case No. 16-CV-04323-YGR 2016 WL 6563355, at *6 (N.D. Cal., Nov. 4, 2016). Although discovery has yet to commence, Plaintiff's counsel, as stated above, believes that Defendant has engaged in this type of action on a regular basis for quite some time. This Court would best serve helping the public

through engaging in actions that enjoin Defendant from continuous unrestricted solicitation of their business to the public through rampant and unrestricted telephone marketing. Defendant, and others like them, engage in this type of solicitation on a daily business. In the speedy resolution of this matter, the Court would establish precedent that would prevent other business entities from engaging in the type of activities that cause frustration and invade the privacy of the public on an hourly basis.

Robo-dialing consumers to solicit products and services is the classic example of the type of unwanted activity expressly envisioned by Congress in passing the TCPA. *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740, 742-46 (2012). The Supreme Court has noted that such unrestricted telemarketing calls are an "intrusive nuisance" and an "invasion of privacy." *Id*. Yet, Defendant fails to indicate to the Honorable Court in its Request for a Stay of proceedings, whether it has, or intends to materially alter its practices, despite being faced with a nationwide class action lawsuit. What is abundantly clear is that members of the putative class will continue to suffer the exact kind of damages at issue, during the pendency of the stay, and that Defendant will continue to profit by way of these allegedly illegal marketing practices, and gain an unfair competitive advantage over law-abiding competitors. To assume that this issues in this case is not time-sensitive is to minimize the harm of the illegal activities and practices of Defendant.

## V. CONCLUSION

Based upon the foregoing discussion, Plaintiff respectfully requests this Court deny Defendant's Motion.

Dated**:** June 18th, 2018        **Law Offices of Todd M. Friedman, P.C.**

                    By:\_/s/ Todd M. Friedman\_\_\_\_
                    Todd M. Friedman, Esq.
                    Attorneys for Plaintiff

# **CERTIFICATE OF SERVICE**

Filed electronically on this 18th Day of June, 2018, with:

United States District Court CM/ECF system.

Notification sent electronically on this 18th Day of June, 2018, to:

Honorable George Wu

United States District Court

Central District of California

And All Counsel of Record as Recorded On The Electronic Service List

/s/ Todd M. Friedman, Esq.

TODD M. FRIEDMAN